IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| WILLIE G. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 126-065 |
| | ) | |
| CORNERSTONE RESIDENTIAL | ) | |
| MANAGEMENT, LLC d/b/a Freedom's | ) | |
| Path Ltd.; THE HOUSING AUTHORITY | ) | |
| OF THE CITY OF AUGUSTA; CLERK | ) | |
| HATTIE HOLMES SULLIVAN; JUDGE | ) | |
| ASHLEY WRIGHT; and DANIEL | ) | |
| HAMILTON, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in the above-captioned case. Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. See Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*).

**I.    Screening the Amended Complaint**

**A.    Background**

Plaintiff names the following Defendants: (1) Cornerstone Residential Management, LLC, ("Cornerstone") (2) The Housing Authority of the City of Augusta ("Housing Authority"), (3) Clerk Hattie Holmes Sullivan, (4) Richmond County Superior Court Judge Ashley Wright, and (5) attorney Daniel Hamilton. (Doc. no. 7, p. 1.) Taking all of Plaintiff's

factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff rented an apartment from Cornerstone.  (Id. at 3.)  In December 2024, an unidentified agent or employee of Cornerstone fraudulently substituted a page in Plaintiff's lease.  (Id.)  Cornerstone later alleged to the Richmond County state court that Plaintiff had not paid rent in more than one year and his lease ended in January 2025.  (Id. at 2, 5.)  Both allegations are false and, on February 25, 2026, the Housing Authority confirmed Plaintiff's Section 8 subsidy was active as of October 31, 2025.  (Id. at 5.)

On March 5 or 6, 2026, Judge Wright signed an order granting a writ of possession instanter even though she had not issued a "Registry Payment Order under O.C.G.A § 44-7-54[.]"  (Id. at 2.)   To ensure Plaintiff's seven-day window to appeal expired before Plaintiff could act, Clerk Sullivan did not post Judge Wright's order on the public docket until March 13, 2026.  (Id. at 4.)  Once he belatedly learned a writ of possession had been granted, Plaintiff filed an emergency motion to set aside the Order on March 17, 2026.  (Id.)  On March 23, 2026, Mr. Hamilton "learned of the situation" and drafted a proposed order backdated to March 20, 2026, which Judge Wright signed and Clerk Sullivan docketed on March 27, 2026.  (Id. at 4-5.)  Mr. Hamilton ignored Plaintiff's emergency motion, which contained documents Mr. Hamilton later claimed were missing.  (Id. at 5.)

On an unspecified date prior to Plaintiff's eviction, Cornerstone obtained a "pink 24-hour notice" from the state court, which was left on Plaintiff's door for approximately two weeks.  (Id. at 3.)  On March 23, 2026, Richmond County Marshals arrived at Plaintiff's residence "at gunpoint and forcibly removed him" from the premises, damaging "his diabetic medication, computer, and vision-aid equipment, etc." in the process.  (Id.)  During Plaintiff's removal, Cornerstone found the pink 24-hour notice on the ground.  (Id.)

In sum, all five Defendants "engaged in docket tampering, record concealment, fraud upon the court and administrative obstruction" during Plaintiff's eviction proceedings. (Id. at 5.) As a result, Plaintiff suffered "physical injury, emotional distress, loss of personal property, loss of housing, and exacerbation of service-connected disabilities, including loss of vision due to stress and an unhealthy studio unit filled with unnatural dust." (Id. at 6.)

For relief, Plaintiff requests emergency federal intervention, a temporary restraining order, and a preliminary injunction. (Id.) Additionally, Plaintiff requests that the Court vacate the state-court eviction and restore Plaintiff to the premises. (Id.) Plaintiff also seeks compensatory damages and punitive damages, and he requests this matter be referred for "federal investigation, including review by the HUD, VA OIG, and the DOJ Civil Rights Division." (Id.)

## B.      Discussion

### 1.      Legal Standard for Screening

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. The complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2.    Plaintiff Brings § 1983 Claims for Procedural Due Process Violations

As a preliminary matter, a brief discussion about Plaintiff's claims is helpful to focus the Court's analysis. Plaintiff titled his amended complaint "First Amended Complaint for Violation of Civil Rights (42 U.S.C. § 1983)." (Doc. no. 7, p. 1.) After detailing the alleged facts underlying his claims, Plaintiff contends Defendants "engaged in docket tampering, record concealment, fraud upon the court, and administrative obstruction that deprived Plaintiff of his federal rights."

4

(Id. at 5.)  Although Plaintiff cites broadly to the Fourth Amendment, Fourteenth Amendment, Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the Fair Housing Act ("FHA") in the jurisdiction section of his amended complaint, the substance of his allegations against the named Defendants entirely centers around alleged procedural due process violations in the state court proceedings.  (See generally id.)

For example, even though Plaintiff describes being forcibly evicted by marshals at gunpoint, he does not name any marshals as defendants, and thus any § 1983 claim for violations of the Fourth Amendment necessarily fails.  Indeed, none of the named Defendants were directly involved in the actual eviction.  Likewise, Plaintiff does not bring any standalone claims for violations of the ADA, Rehabilitation Act, or FHA.  He never outlines the elements of these claims or otherwise mentions these statutes anywhere else besides the jurisdiction section of his amended complaint.  (See id.)  For these reasons, the Court construes Plaintiff's amended complaint as alleging only § 1983 claims for violations of procedural due process.

However, to the extent Plaintiff seeks to use § 1983 to enforce his rights under the listed federal statutes, these claims fail.  First, the ADA and Rehabilitation Act do not confer enforceable rights under § 1983.  See Euwema v. Osceola Cnty., No. 6:20-CV-1375, 2021 WL 2823448, at *5 (M.D. Fla. Apr. 12, 2021) ("Permitting a plaintiff to sue for the same conduct under both § 1983 and the ADA 'would provide the plaintiff with two bites at precisely the same apple.'" (quoting Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997))); Veal v. Mem'l Hosp. of Washington Cnty., 894 F. Supp. 448, 453 (M.D. Ga. 1995) ("[T]he comprehensive remedies, procedures, and rights provided by [§ 504] of the Rehabilitation Act) foreclose the necessity of § 1983.").  Likewise, to the extent Plaintiff argues Defendants deprived him of a right secured by the FHA and its implementing regulations, such a claim fails because he does not specify the

federal right or corresponding implementing regulation.  See, e.g., Yarbrough v. Decatur Hous. Auth., 931 F.3d 1322, 1323 (11th Cir. 2019) ("[W]e overrule [Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008)] and its progeny inasmuch as those cases held that the Housing Act or its implementing regulations create a right enforceable by § 1983 to a termination decision made by the preponderance of the evidence.").

With this discussion about Plaintiff's claims now settled, the Court addresses Plaintiff's § 1983 claims for violations of procedural due process and concludes they are barred by the Rooker-Feldman doctrine.

### 3.    Plaintiff's Claims Are Barred by the Rooker-Feldman Doctrine

Plaintiff's claims are barred by the Rooker-Feldman doctrine because his claims are inextricably intertwined with the state court's order granting the writ of possession instanter. "Under Rooker-Feldman, 'a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" Efron v. Candelario, 110 F.4th 1229, 1235 (11th Cir. 2024) (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)), cert. denied 145 S. Ct. 1958, (2025). "Succinctly put, 'federal courts are not a forum for appealing state court decisions.'" Jackson v. Child Support, No. 8:18-CV-2828, 2018 WL 8754206, at *2 (M.D. Fla. Dec. 5, 2028), adopted by 2019 WL 2052324 (M.D. Fla. May 9, 2019).  Rooker-Feldman is a jurisdictional doctrine.  See Alvarez v. Att'y Gen. for Fla., 679 F.3d 1257, 1262 (11th Cir. 2012) ("The doctrine is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments.")

To determine whether the Rooker-Feldman doctrine bars a plaintiff's claims, the relevant inquiry "is whether the case has been 'brought by state-court losers complaining of

injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Efron, 110 F.4th at 1235 (quoting Behr v. Campbell, 8 F.4th 1206, 1212 (11th Cir. 2021)). "This requires a court to determine whether the plaintiff seeks relief from an injury 'caused by the judgment itself' or whether he seeks damages for some independent source of injury. If the source of the plaintiff's injury is the state-court judgment itself, then Rooker-Feldman applies." Id. at 1235-36 (quoting Behr, 8 F.4th at 1212) (citations omitted). The Rooker-Feldman doctrine "does not apply if a party lacked a reasonable opportunity to raise his federal claim in state court." Cavero v. One W. Bank FSB, 617 F. App'x 928, 930 (11th Cir. 2015) (*per curiam*).

Furthermore, the Rooker-Feldman doctrine "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are inextricably intertwined with a state court judgment." Christophe v. Morris, 198 F. App'x 818, 825 (11th Cir. 2006) (*per curiam*) (internal quotations omitted); see also Levine v. Roberts, No. 121CV02189, 2022 WL 2389271, at *6 (N.D. Ga. May 10, 2022) ("Rooker–Feldman bars not only cases seeking direct review of state court judgments; it also bars cases that are 'inextricably intertwined' with a prior state court judgment." (quoting Bisbee v. McCarty, 3 F. App'x 819, 822 (10th Cir. 2001))), *adopted by* 2023 WL 3628304 (N.D. Ga. Mar. 20, 2023). "A claim filed in federal court is inextricably intertwined with a state court judgment if it would 'effectively nullify' the state court judgment or if it 'succeeds only to the extent that the state court wrongly decided the issues.'" Cavero, 617 F. App'x at 930 (quoting Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009)).

Here, Plaintiff's claims concerning allegedly fraudulent state court proceedings are inextricably intertwined with the order granting the writ of possession. First, Plaintiff is a

"state court loser," and the writ of possession was granted before the instant proceedings commenced. See Efron, 110 F.4th at 1235. Next, the writ of possession forms the basis of or is intertwined with Plaintiff's alleged injuries. In his amended complaint, Plaintiff claims Defendants' alleged fraudulent actions during the state court proceedings culminated in the state court granting the writ of possession, which forcibly evicted him from his apartment, in turn causing him property loss and exacerbating his emotional distress, disabilities, and physical injuries. (Doc. no. 7); see also Mickens v. 10th Jud. Cir. Ct., 458 F. App'x 839, 841 (11th Cir. 2012) (*per curiam*) (concluding state court foreclosure judgment formed the basis of or was intertwined with injuries where plaintiffs' complaint "that their loss of ownership and possession of their property, monetary damages, and emotional suffering were the result of fraudulent proceedings"). If the Court were to find in Plaintiff's favor for these injuries, the Court would have to conclude the state court wrongly granted the writ of possession.

Most tellingly, part of Plaintiff's requested relief is for the Court to "vacate the state-court eviction and restore Plaintiff to the premises." (Doc. no. 7, p. 6.) Essentially, Plaintiff asks this lower federal court to review and reject a state court judgment, which Rooker-Feldman plainly bars the Court from doing. Moreover, that Plaintiff also requests monetary damages does not alter the instant conclusion. The requested monetary relief is to compensate him for injuries caused by the writ of possession ordering his eviction – including loss of property, loss of housing, and exacerbation of his disabilities, injuries, and emotional distress – not for some independent source of injury. For these reasons, Plaintiff's claims are inextricably intertwined with the state court order granting the writ of possession, as they can only succeed if this Court concluded the state court wrongly granted the writ of possession. See Cavero, 617 F. App'x at 930; see also Reaves v. Clemons, No. 1:24-CV-2160, 2024 WL

8

3390446, at *6 (N.D. Ga. June 3, 2024), (concluding § 1983 claims based on violation of due process rights based on state court's eviction order were barred by <u>Rooker-Feldman</u>), *adopted by* 2024 WL 3843021 (N.D. Ga. July 10, 2024); <u>Efron</u>, 110 F.4th at 1237 ("In sum, [plaintiff's] due process challenge 'boils down to a claim that the state court judgment itself caused him constitutional injury.'" (quoting <u>Alvarez</u>, 679 F.3d at 1263)).

Accordingly, the Court lacks jurisdiction over Plaintiff's claims, and his amended complaint must be dismissed in its entirety.  Moreover, to the extent Plaintiff's claims are not barred by <u>Rooker-Feldman</u>, many of Plaintiff's claims should also be dismissed for the reasons explained below.

### 4. Plaintiff Also Fails to State a Claim Upon Which Relief May Be Granted for Many of His Claims

As explained below, Plaintiff also fails to state a claim for procedural due process violations against Defendants Housing Authority, Cornerstone, and Mr. Hamilton.  Further, he fails to state a claim for monetary relief against Defendant Judge Wright.

### a. Plaintiff Fails to State a Claim Against Defendant Housing Authority

The Eleventh Circuit has held that a district court properly dismisses a defendant where a plaintiff, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation.  <u>Douglas v. Yates</u>, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.").  While Plaintiff names Housing Authority of Augusta as a defendant in the caption of his amended complaint and cursorily mentions this Defendant in twice in his statement of claim, he fails to connect this Defendant with a purported

9

constitutional or statutory violation. (See doc. no. 7.) Plaintiff merely alleges the Housing Authority confirmed his Section 8 subsidy was active in October 2025, and then, without providing any other details, he later summarily concludes the Housing Authority "engaged in docket tampering, record concealment, fraud upon the court, and administrative obstruction . . . ." (Id. at 5.) Such conclusory allegations are insufficient to connect the Housing Authority to a legal wrong, and accordingly, Plaintiff fails to state a claim against this Defendant. (See generally id.)

          **b.      Plaintiff Fails to State a Valid § 1983 Claim Against Defendants Cornerstone and Hamilton Because They Are Not State Actors**

Moreover, Cornerstone and Mr. Hamilton are not a proper parties under § 1983 because they are not state actors. "A plaintiff raising a section 1983 claim must show the deprivation of 'a federal right by a person acting under color of state law.'" Gustino v. Stoneybrook W. Master Ass'n, Inc., 842 F. App'x 323, 328 (11th Cir. 2021) (*per curiam*) (quoting Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001)). Thus, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992).

To hold that private parties, such as Cornerstone and Mr. Hamilton, are state actors, one of three conditions must be met: (1) the state coerced or significantly encouraged the action alleged to violate the Constitution; (2) the private party performed a function "traditionally the exclusive prerogative of the state;" or (3) the state "so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise." Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (citing NBC v. Commc'n Workers of Am., 860 F.2d 1022, 1026–27 (11th Cir. 2011)).

10

Here, Plaintiff alleges Cornerstone initiated eviction proceedings against him, and Mr. Hamilton represented Cornerstone in these proceedings. (See doc. no. 7.) Nowhere does Plaintiff allege the state coerced either Defendant to violate the Constitution, that either Defendant performed a function traditionally within the State's exclusive prerogative, or that either Defendant was a joint participant in an enterprise with the state. (See id.) Although Cornerstone participates in the Section 8 housing program, "State action is not established merely because a private entity receives government funding." Shell v. Foulkes, 362 F. App'x 23, 27 (11th Cir. 2010) (*per curiam*); see also Reaves v. City of Auburn, No. 3:24-CV-283, 2024 WL 5050030, at *4 (M.D. Ala. Oct. 28, 2024) ("Merely alleging that an eviction occurred in a residence that is allegedly governed by Section 8 regulations and that this eviction was observed by police does not satisfy the requirements under § 1983 to allege how the landlord's actions in conducting the eviction can be treated as the actions of the state itself."), *adopted by* 2024 WL 5046713 (M.D. Ala. Dec. 9, 2024).

Accordingly, Plaintiff fails to state a claim against Defendants Cornerstone and Hamilton because they are not state actors.

### c. Defendant Judge Wright is Immune from Plaintiff's Claims for Monetary Damages

Plaintiff's claims for monetary damages against Defendant Judge Wright are barred by judicial immunity. It is well-settled that judicial officers are entitled to absolute immunity for "actions taken . . . within the legitimate scope of judicial authority." Rehberg v. Paulk, 566 U.S. 356, 363 (2012); Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (stating that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"). Thus, the Court must determine

11

whether Judge Wright, as the presider over the state court proceedings, was dealing with Plaintiff in a judicial capacity and whether the conduct alleged clearly fell outside her subject matter jurisdiction. See Stump, 435 U.S. at 359-64.

As Plaintiff makes no allegation Judge Wright acted in the "clear absence of all jurisdiction," id. at 357, the Court must consider whether her actions were of the type normally performed by judges. Patterson v. Aiken, 628 F. Supp. 1068, 1072 (N.D. Ga. 1985), *aff'd*, 784 F.2d 403 (11th Cir. 1986) (Table). Here, Plaintiff only alleges Judge Wright improperly entered an order granting the writ of possession. (See generally doc. no. 7.) Thus, Plaintiff provides no details to suggest Judge Wright took any actions that were not of the type normally performed by judges. Accordingly, Plaintiff fails to state a valid claim for relief against Judge Wright for monetary damages.

## II.      Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** this case be **DISMISSED**, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 22nd day of June, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

12